Filed 3/26/26  P. v. Steele CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>NICOLAS STEELE,<br><br>    Defendant and Appellant. | G066090, G066148<br><br>(Super. Ct. No. 97HF0954)<br><br>O P I N I O N |

Appeal from postjudgment orders of the Superior Court of Orange County, Kevin Haskins, Judge. Affirmed.

Steven A. Brody for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Eric A. Swenson and Tyler L. Krentz, Deputy Attorneys General, for Plaintiff and Appellant.

\*          \*          \*

In 1997 Nicolas Steele pled guilty to multiple criminal charges, including crimes of moral turpitude and felony child endangerment. In 2025, Steele filed a petition asking the trial court to vacate his convictions. The trial court denied the petition and a motion for reconsideration.

We affirm. Steele did not establish prejudice arising from his criminal defense counsel's failure to properly advise him regarding the immigration consequences of his guilty plea.

FACTUAL AND PROCEDURAL BACKGROUND

Steele, a citizen of New Zealand, entered the United States legally in 1991, but overstayed his visa. In 1997, Steele was charged with: (1) felony theft of an automobile (Pen. Code, § 487, subd. (d)); (2) felony unlawful taking or driving of a vehicle (Veh. Code, § 10851, subd. (a); (3) felony child abuse causing great bodily injury (Pen. Code, § 273a, subd. (a)); (4) misdemeanor driving on a suspended license (Veh. Code, § 14601, subd. (a)); and (5) misdemeanor reckless driving (*id.*, § 23103, subd. (b)).

Steele pled guilty to all charges. The factual basis for his guilty plea reads: "On or about 7/8/97 and 8/24/97, in Orange County, I unlawfully took a vehicle from Hertz Rental with intent to deprive [the] owner of possession. I also drove a vehicle while my CDL was suspended, drove recklessly and endangered a child in my car." Steele initialed paragraph 8 of the guilty plea form: "I understand that if I am not a citizen of the United States the conviction for the offense charged *may have the consequence* of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." (Italics added.) Steele also initialed paragraph 22 of the guilty plea form, reading in relevant part: "I understand each and every one of the rights outlined above and I

2

hereby waive and give up each of them in order to enter my plea to the above charge(s). *I am entering a plea of guilty because I am in fact guilty and for no other reason.*" (Italics added.)

The maximum potential sentence for all charges was four years, eight months; pursuant to the plea agreement, imposition of sentence was suspended, and Steele was to be on probation for three years, with 30 days in jail and 40 days of community service. Steele failed to report to probation, however, and failed to report to jail to begin his 30-day sentence. The trial court therefore revoked his probation and issued a bench warrant. At some point, Steele committed another felony violation of Penal Code section 487, and he was sentenced to 16 months in state prison by the Los Angeles Superior Court. Steele was ordered to serve his sentence in this matter concurrently with his sentence in the other matter, and his probation was terminated in 2000.

In 2012, Steele married a United States citizen. He has two children who are United States citizens.

In 2025, Steele filed a petition pursuant to Penal Code section 1473.7 asking the trial court to vacate his convictions. Steele supported that petition with declarations from himself, an attorney who is an expert on immigration law, and a declaration from the criminal defense attorney who represented him at the time he entered his guilty plea.

Steele's declaration stated he had built a life in the United States at the time of his arrest in 1997, and he intended to remain in the United States. Steele also stated that, despite the statements to the contrary in his 1997 guilty plea, he continued to believe he was innocent of all charges. Steele stated he "never would have accepted the plea I was offered or any plea, had I known that a negative immigration consequence would be a

3

certainty, not merely a possibility and that there were possible alternative pleas out there." Steele explained that his criminal defense attorney knew he was not a United States citizen, but never explained that pleading guilty to crimes of moral turpitude or to felony child endangerment would subject him to deportation. Further, his attorney never informed him there were alternative crimes he might be able to plead guilty to that would not have the same immigration consequences. To the contrary, Steele contends his criminal defense attorney "informed me that there was a possibility of immigration consequences, however, he never explained what [the] full array of consequences was and how they might be avoided. [My attorney] advised me to just take the plea deal and 'keep a low profile.' I understood this to mean that I would not suffer negative immigration consequences if I just pled guilty. [¶] . . . Had I known that I would suffer the immigration consequences I now suffer, I never would have accepted the plea, particularly because I believed in my innocence and accepted the bargain because [my attorney] informed me that I would not suffer negative immigration consequences as long as I completed all the terms of my probation and kept a 'low profile.'"

The immigration law expert retained by Steele submitted a declaration in support of the petition to vacate stating two of Steele's felony convictions constituted crimes involving moral turpitude, making him inadmissible, deportable, and ineligible for adjustment of status. The expert further declared that if Steele had sought immigration advice from him in 1997, he would have advised Steele to plead guilty to other lesser included crimes that would not constitute crimes of moral turpitude.

Steele's former criminal defense attorney who represented him in 1997 did not have any specific recollection of his communications with Steele. He admitted he knew little about immigration law at that time, did not

4

independently research the immigration consequences of Steele's guilty plea, and did not communicate with any immigration law experts. He also admitted that at that time, his practice was to inform clients, "'I'm not an immigration attorney but this conviction can have an adverse effect on your immigration status. I don't know if it will, but it could.'"

The trial court denied the motion. "So with regard to the petition, it's respectfully denied. With regard to the showing, with regard to misadvisement, I think the petitioner has met the burden of proof that he wasn't fully or properly advised; however, with regard to the issue of prejudice, the Court finds that he has not established that he was prejudiced by the misadvisement or lack of the advisement."

Steele filed a motion for reconsideration. The trial court, after hearing Steele's testimony on limited issues, issued a lengthy, detailed statement of decision. The court again concluded Steele had established he was not fully and correctly advised of the immigration consequences of his guilty plea, but had not established prejudicial error. The court therefore denied the motion for reconsideration.

After the motion for reconsideration was denied, Steele filed separate notices of appeal from both orders. This court consolidated the two appeals on Steele's motion.

DISCUSSION

To prevail on a motion under Penal Code section 1473.7, Steele was required to show by a preponderance of the evidence (1) he did not subjectively understand the immigration consequences of his guilty plea, and (2) his lack of understanding constituted prejudicial error. (*People v. Espinoza* (2023) 14 Cal.5th 311, 319.) We review the trial court's order denying the motion de novo. (*Ibid.*)

5

The Attorney General does not dispute that Steele did not understand the consequences of his guilty plea. We therefore proceed to the issue of whether this lack of understanding prejudiced Steele.

To establish prejudicial error, Steele must demonstrate "a reasonable probability that [he] would have rejected the plea if [he] had correctly understood its actual or potential immigration consequences." (*People v. Vivar* (2021) 11 Cal.5th 510, 529.) We consider the totality of the circumstances in determining whether Steele has demonstrated such a reasonable probability. (*Ibid.*) "Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Id.* at pp. 529–530.) "These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*People v. Espinoza, supra*, 14 Cal.5th at p. 321.) "It is not enough for the defendant simply to declare that he or she would not have accepted a plea that would result in deportation. [Citation.] Rather, the defendant must 'corroborate such assertions with "objective evidence."' [Citation.]" (*People v. Curiel* (2023) 92 Cal.App.5th 1160, 1178.)

The trial court prepared a thorough and thoughtful statement of decision that is devastating to Steele's claims of prejudicial error. The court found the assertions in Steele's declaration to be not credible and provided specific reasons for making that finding. The court noted that Steele's automated criminal history indicated Steele was born in Italy, not New Zealand as he claimed, he had used several aliases and dates of birth over several years, and he had a "history of fraudulent conduct between 1992 and 1998." The court found the discrepancies in his birth date indicated Steele did

not have strong ties to the United States and the use of aliases in his contacts with law enforcement suggested "a strong desire to avoid the process of the court and possible incarceration" and "lack of concern over his future immigration status."

The trial court noted Steele had not corroborated his claims that he had entered the United States in 1991 on a lawful work visa and he provided no specific facts about his work history or financial ties to the United States. Steele never even stated what kind of work he was doing between 1991 and 2005. The records before it led the trial court to believe that "[Steele] appears to have been self-employed as an itinerant thief at the time of the instant plea."

The trial court found not credible Steele's claim that he would have insisted on an immigration neutral disposition or gone to trial if he had been properly advised of the immigration consequences of his plea. Following sentencing in November 1997, Steele absconded from probation and then failed to appear at the county jail in February 1998 to serve the remaining 21 days of his sentence. That behavior, the court found, indicated a "short-sided world view" that was "inconsistent with his current claims regarding his long-term immigration priorities at that time."

We apply an independent standard of review to the order denying Steele's petition to vacate his guilty plea, which means we are not bound to accept the trial court's credibility findings because Steele testified by declaration. (*People v. Vivar* (2021) 11 Cal.5th 510, 527–528.) However, we agree with the trial court's assessment of Steele's credibility; indeed, we find that assessment to be compelling.

Steele fails to offer objective, contemporaneous evidence that he would not have accepted the plea offer if he had known doing so would have

7

made him deportable. (*People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1134; see *Jae Lee v. United States* (2017) 582 U.S. 357, 369.) While the immigration expert identified other charges to which Steele might have pled guilty that would not have had the same immigration consequences, neither Steele nor his criminal defense attorney include in their declarations that the immigration consequences of Steele's guilty plea were discussed, much less that they were of importance in his decision-making process.

Although Steele claims in his declaration that he intended to remain in the United States and make this country his home, his declaration does not offer any evidence he had lasting ties to the United States or had cut off ties to New Zealand at that time. Steele offers no evidence of community ties, ownership of property, or personal relationships in the United Sates as of 1997. His marriage almost 15 years later, and the birth of his children after that, does not establish his ties to the United States when he entered his guilty plea.

Both before and after his guilty plea in the current case, Steele had been convicted of theft-related crimes. While these convictions may not have directly had immigration consequences, they combine with his guilty plea in the present case to indicate Steele's general lack of focus on ensuring he was not going to run afoul of immigration rules. Further, Steele's failure to comply with the terms of his sentence in the present case and to avoid further criminal activity for any reasonable amount of time indicates he was not concerned about the immigration consequences of his criminal activities.

# DISPOSITION

The postjudgment orders are affirmed.



BANCROFT, J.*

WE CONCUR:


MOTOIKE, ACTING P. J.


SANCHEZ, J.

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.